**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0617-18T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JAHMELL W. CROCKAM,

     Defendant-Appellant.

_____

Submitted March 3, 2020 – Decided April 14, 2020

Before Judges Yannotti and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Indictment No. 11-03-0471.

Joseph E. Krakora, Public Defender, attorney for appellant (Howard W. Bailey, Designated Counsel, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Steven A. Yomtov, Deputy Attorney General, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from an order entered by the Law Division on January 9, 2018, which denied his petition for post-conviction relief (PCR). For the reasons that follow, we affirm in part, and remand in part for further proceedings.

I.

In March 2011, an Ocean County grand jury charged defendant with first-degree murder, N.J.S.A. 2C:11-3(a)(1) or (2), with aggravating factors of murder of a public servant, N.J.S.A. 2C:11-3(b)(4)(h), and murder to escape detection, N.J.S.A. 2C:11-3(b)(4)(f); second-degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a); and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). Thereafter, defendant was tried before a jury.

At the trial, evidence was presented showing that in December 2010, the Lakewood police unsuccessfully attempted to locate defendant at his girlfriend's apartment. At the time, there were two outstanding warrants for his arrest. On January 14, 2011, the police again attempted to locate defendant. A detective contacted Tonya Cook, the owner of the home where defendant had been living.

The detective asked Cook where he could find defendant. She said she did not know.

Cook then called defendant's girlfriend and asked if she knew where defendant could be found because the police were looking for him. Defendant's girlfriend said she did not know; however, defendant was with her at the time listening to the call on a speaker phone. Defendant's girlfriend gave defendant his .38 caliber revolver and told him to leave because she did not want any trouble. Defendant left around 4:00 p.m.

At about that time, Officer Christopher Matlosz of the Lakewood police force was on patrol and encountered defendant. He had a brief conversation with defendant. A man was standing nearby. He saw defendant start to walk away and heard Matlosz tell defendant he had to come with him. According to the witness, defendant said, "oh man."

The witness stated that Matlosz briefly turned away and appeared to be speaking on a cellphone or radio. Defendant walked back to the police car, removed a .38 caliber handgun from his pocket, and shot Matlosz in the neck. Defendant leaned towards the driver's side window and fired two more shots, which struck Matlosz in the head at point-blank range. Defendant fled on foot.

A-0617-18T2

Defendant called his friend Quamel Peteet and told him he "got in some bullshit" and needed a ride. Peteet, Peteet's girlfriend, and Daniel Bergamotto picked up defendant. He asked them to give him a ride to Camden. During the trip, defendant said he shot a cop in the head and killed him. They dropped defendant at the apartment of a friend, Angel Howard. Defendant told Howard's boyfriend that he was wanted for killing a police officer.

Sometime later, defendant's friend Corey Rua came to Howard's apartment. Defendant told Rua he killed a cop and the police were looking for him. Thereafter, defendant told another friend that he shot a police officer, claiming that the officer had been reaching for his gun. Defendant gave the gun to this individual. Defendant drove with him to a pier and they threw the gun into the Delaware River.

The investigation led the police to defendant. On January 16, 2011, the police arrested defendant at Howard's apartment in Camden. While in jail, defendant told three inmates that he had killed Matlosz and he provided specific details about the shooting. Defendant reportedly stated that one of the shots was "up close and personal." One of the inmates said defendant told him that in the months before the shooting, defendant knew there were warrants for his arrest and he was thinking of killing a police officer.

A-0617-18T2

Defendant gave a recorded statement to the police. He admitted that he was in the area where the shooting occurred and that he saw the officer who was shot. He stated, however, that he went to Camden on the afternoon of January 14, 2011, and only learned about the shooting while watching reports on the television.

The jury found defendant guilty of first-degree murder, with the two aggravating factors charged in the indictment. The jury also found defendant guilty of second-degree possession of a handgun for an unlawful purpose and second-degree unlawful possession of a weapon. The trial judge later sentenced defendant to life imprisonment without parole.

Defendant appealed from the JOC dated March 22, 2012. In that appeal, defendant raised the following arguments:

> POINT I
> A GROSSLY SUGGESTIVE CELL-PHONE PICTURE OF DEFENDANT WHICH WAS SENT TO AN EQUIVOCATING KEY EYEWITNESS FROM HIS SON-IN-LAW'S "S.W.A.T. BUDDY," SHOULD NOT HAVE BEEN ADMITTED INTO EVIDENCE SINCE IT WAS UNRELIABLE HEARSAY AND DIRECTLY RESULTED IN AN IDENTIFICATION OF DEFEDNANT AS THE SHOOTER.
>
> POINT II
> THE ADMISSION OF DEFENDANT'S PURPORTED STATEMENT THAT HE WAS GOING TO KILL A COP BEFORE GOING TO JAIL, AS WELL AS

ADMISSION OF UNRELATED ARREST WARRANTS WAS INADMISSIBLE PRIOR BAD-ACTS EVIDENCE AND, IN ANY CASE, WAS FAR MORE PREJUDICIAL THAN PROBATIVE, ESPECIALLY SINCE MOTIVE WAS NOT AN ISSUE.

We affirmed defendant's conviction. State v. Crockam, No. A-4400-12 (App. Div. February 3, 2018). The Supreme Court denied defendant's petition for certification. State v. Crockam, 228 N.J. 245 (2016).

Thereafter, defendant filed a petition for PCR alleging ineffective assistance of counsel. The trial court assigned counsel for defendant and counsel filed a letter brief in support of defendant's petition. In that brief, PCR counsel argued that the petition was timely. Counsel also argued that defendant was denied the effective assistance of counsel because his trial attorney failed to call defendant's grandmother as a witness at trial and obtain her cellphone records.

PCR counsel noted that at trial, the State had argued defendant knew there was an outstanding warrant for his arrest, and defendant shot the officer to avoid capture. PCR counsel noted, however, that defendant claimed that a month before the shooting, he used his grandmother's cellphone and contacted the Ocean County Sheriff's Department (OCSD) to inquire whether he had any outstanding warrants.

A-0617-18T2

PCR counsel noted that defendant had alleged that the OCSD informed him there was no such warrant and that up until the time of the shooting, defendant had no information to the contrary. According to PCR counsel, defendant further alleged that his grandmother's cellphone records would have substantiated this claim.

In addition, PCR counsel argued that the State had called five witnesses who testified that they heard defendant admit to shooting the officer: Pateet, Bergamatto, Rua, Howard, and Cook. Defendant claimed the detectives learned the identities of these witnesses by making an illegal search of his grandmother's cellphone.

PCR counsel argued that if called to testify, defendant's grandmother would have testified that the police took her phone without a warrant or her consent and thereafter unlawfully searched its contents. Counsel asserted that the phone contained identifying information about the five witnesses called to testify against him. He argued that trial counsel should have filed a motion to suppress the testimony of these witnesses.

The judge heard oral argument and thereafter filed a written opinion. The judge found defendant's petition was timely. The judge also found defendant had not presented a prima facie case of ineffective assistance of counsel, under

the two-prong test established in <u>Strickland v. Washington</u>, 455 U.S. 668, 687-98 (1984), which our Supreme Court had adopted in <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987), for consideration of ineffective-assistance-of-counsel claims under the New Jersey Constitution.

The judge found that defendant failed to show that his trial counsel erred by failing to obtain his grandmother's cellphone records. The judge noted that these records would only have proven that a call was made. The records would not show that the OCSD had informed defendant there was no outstanding warrants for his arrest, as defendant claimed.

The judge observed that on the day of the shooting, the Lakewood police called Cook and asked where they could find defendant. Cook called defendant's girlfriend and told her the police were looking for defendant. She asked defendant's girlfriend if she knew where defendant could be found. Defendant's girlfriend said she did not know; however, defendant was with her at the time. He heard the call on the speaker phone.

The judge pointed out that this evidence showed that "regardless of whether he knew there was a warrant out for his arrest[,]" defendant knew the police were looking for him. The judge found this evidence refuted defendant's claim that he had no motive to shoot the officer.

The judge also stated that defendant had not presented any evidence to support defendant's claim that his trial attorney erred by failing to suppress the testimony of the five witnesses who testified that they heard defendant admit to shooting the officer. The judge noted that defendant had not presented an affidavit or certification supporting his claim that the State learned the identities of these witnesses during an illegal search of his grandmother's cellphone.

The judge had given defendant additional time to supplement the record. According to the judge, defendant provided an unsworn statement from his grandmother, indicating that she gave the police her cellphone. The judge pointed out that defendant's grandmother did not mention anything about obtaining witness-contact information from her phone.

The judge found that defendant had not presented any evidence to show the police obtained the identifying information unlawfully. The judge stated that defendant had "offered nothing to refute the many valid ways in which a full-scale law enforcement investigation of a major crime could identify witnesses."

The judge concluded that defendant did not present a prima facie case of ineffective assistance of counsel. Therefore, he was not entitled to an evidentiary hearing. The judge wrote:

9

[Defendant's] claim that police officers illegally searched his grandmother's phone is not supported by any evidence. [Defendant's] argument that he lacked the motive to kill a law enforcement officer because he did not know there was a warrant out for his arrest is not persuasive. [Defendant] knew the police were looking for him when he listened to the phone call made to [his girlfriend] on speaker. Second, there were multiple witnesses at trial who testified that [defendant] admitted killing Officer Matlosz or testified that [defendant] would only go back to prison for killing a law enforcement officer. Third, the State presented overwhelming evidence of [defendant's] guilt at the trial that this [c]ourt feels would not have been able to be overcome by any of the aforementioned "bald assertions" made by [defendant].

The judge entered an order dated January 9, 2018, denying PCR. This appeal followed.

On appeal, defendant raises the following arguments:

POINT I:
THE POST-CONVICTION RELIEF COURT ERRED IN DENYING THE DEFENDANT'S PETITION FOR POST-CONVICTION RELIEF WITHOUT AFFORDING HIM AN EVIDENTIARY HEARING TO FULLY ADDRESS HIS CONTENTION THAT HIS TRIAL ATTORNEY WAS INEFFECTIVE IN FAILING TO CHALLENGE THE ILLEGAL SEARCH AND SEIZURE OF THE CELL PHONE.

A. THE PREVAILING LEGAL PRINCIPLES REGARDING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL, EVIDENTIARY HEARINGS, AND PETITIONS FOR POST-CONVICTION RELIEF.

10

B. DEFENDANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS TRIAL ATTORNEY FAILED TO CHALLENGE THE ILLEGAL SEARCH AND SEIZURE OF HIS CELL PHONE.

POINT II:
DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF POST-CONVICTION RELIEF COUNSEL.  (Not Raised Below).

II.

As noted, defendant argues that he established a prima facie case of ineffective assistance of counsel and the PCR court erred by denying his request for an evidentiary hearing on his petition.  We disagree.

Initially, we note that an evidentiary hearing on a PCR petition is only required when a defendant presents a prima facie case in support of relief, the court determines there are material issues of fact that cannot be resolved based on the existing record, and the court finds an evidentiary hearing is required to resolve the issues presented.  State v. Porter, 216 N.J. 343, 354 (2013) (citing R. 3:22-10(b)).  "To establish a prima facie case, defendant must demonstrate a reasonable likelihood that his or her claim, viewing the facts alleged in the light most favorable to the defendant, will ultimately succeed on the merits."  R. 3:22-10(b).

A defendant asserting a claim of ineffective assistance of counsel must satisfy the two-part test established in Strickland, 466 U.S. at 687-98, and adopted in Fritz, 105 N.J. at 58. Under that test, a defendant first "must show that counsel's performance was deficient." Strickland, 466 U.S. at 693. The defendant must establish that the attorney's performance "fell below an objective standard of reasonableness" and "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Ibid.

The defendant also must show "that the deficient performance prejudiced the defense." Ibid. To establish prejudice, the defendant must establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 698. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the matter. Ibid.

Here, defendant claims he was denied the effective assistance of counsel because his attorney failed to move to suppress evidence obtained in a search of a cellphone taken from the family residence. He now alleges the phone was his. He claims that when the detectives searched the phone, they learned the identities of the five witnesses who testified at trial that he admitted killing

12

Matlosz. He alleges the evidence was obtained illegally without a warrant and consent of his grandmother, who allegedly was the owner of the account.

In support of this claim, defendant submitted a certification dated October 27, 2017, in which he stated that he told his trial attorney the information "the police said came from a cell phone I was using was taken without permission." He said no one who was present when the officers came to the residence gave them permission "to go through" the cellphone.

Defendant stated that his mother told the officers to give the phone back. He claimed that he told his attorney to call his grandmother, mother, and stepfather to establish that the police were lying and that they took the phone without permission. Defendant also stated that he told his attorney to call his mother to testify she was present when he called the OCSD to ask if he had warrants. He claimed his attorney never contacted these witnesses.

We are convinced, however, that the record supports the PCR court's determination that defendant failed to present sufficient evidence to support the claim that his attorney was deficient because he did not obtain the cellphone records or call his grandmother, mother, and stepfather as witnesses.

As the judge found, the cellphone records would only have established that defendant called the OCSD, if such a call was made, as defendant claimed.

The cellphone records would not substantiate defendant's claim that the OCSD informed him that he had no outstanding warrants. Furthermore, the cellphone records would not have refuted other evidence that defendant was aware the police were looking for him on the day of the shooting.

Moreover, the record shows that defendant did not present sufficient evidence to support his claim that the police illegally seized and searched the cellphone. In his certification, defendant claimed the police came to the family residence and no one present at the time gave the police permission to take the phone. However, defendant was not present at the time, and he does not have personal knowledge of what occurred.

Defendant also stated that his grandmother told him she did not give the police permission to take the phone, but what defendant's grandmother told defendant is inadmissible hearsay. In addition, defendant claimed his grandmother would have testified at trial that she was present when he called the OCSD to inquire as to whether he had warrants. However, he has not provided an affidavit or certification from his grandmother setting forth these facts.

Defendant also claims his attorney was deficient because counsel did not call his mother and stepfather as witnesses. According to defendant, they would

14

have testified that the police were lying and that they took his cellphone without permission. Defendant's mother and stepfather did not, however, submit an affidavit or certification to substantiate this claim.

We therefore conclude that the PCR court correctly determined that defendant failed to present a prima facie case of ineffective assistance of counsel under the Strickland test. The court correctly rejected defendant's claims with regard to the alleged illegal search of the cellphone or the cellphone records. The court did not err by denying defendant's request for an evidentiary hearing on these claims.

III.

Defendant also argues that he was denied the effective assistance of PCR counsel. He argues that PCR counsel did not list or incorporate all of his claims in the brief that counsel filed with the PCR court. Defendant contends the matter should be remanded to the Law Division for another PCR hearing with newly-assigned counsel.

An indigent defendant is entitled to the assignment of counsel for his first PCR petition. R. 3:22-6(a). Our court rules further provide in relevant part that PCR counsel "should advance all of the legitimate arguments requested by the defendant that the record will support." R. 3:22-6(d).

Our Supreme Court has explained that when representing a defendant on a petition for PCR,

> counsel must communicate with the client, investigate the claims urged by the client, and determine whether there are additional claims that should be brought forward. Thereafter, counsel should advance all of the legitimate arguments that the record will support. If after investigation counsel can formulate no fair legal argument in support of a particular claim raised by defendant, no argument need be made on that point. Stated differently, <u>the brief must advance the arguments that can be made in support of the petition and include defendant's remaining claims, either by listing them or incorporating them by reference so that the judge may consider them</u>. That procedure, which will serve to preserve defendant's contentions for federal exhaustion purposes, is all that is required.
>
> [State v. Webster, 187 N.J. 254, 257 (2006) (emphasis added).]

"The remedy for counsel's failure to meet the requirements imposed . . . is a new PCR proceeding." State v. Hicks, 411 N.J. Super. 370, 376 (App. Div. 2010) (citing State v. Rue, 175 N.J. 1, 4 (2002)).

In his petition, defendant asserted that he was denied the effective assistance of trial counsel because counsel did not: (1) challenge the warrant; (2) seek a cross-racial identification charge; (3) investigate to determine if certain witnesses received favorable "deals" for their testimony; (4) file a motion to dismiss the indictment; (5) produce his grandmother, father, and mother for

16

the <u>Wade</u>[1] hearing, (6) file a motion to suppress all witnesses who identified him and made statements against him; (7) send an investigator to look into the photo that was sent out prior to his arrest; and (8) object when a Muslim witness was sworn by placing his hand on a Bible.

As stated previously, in the supplemental brief, defendant's PCR counsel only addressed the claims that defense counsel was deficient because counsel: (1) did not call defendant's grandmother and failed to obtain her cellphone records, and (2) failed to call defendant's grandmother to show that five witnesses who testified against him were identified as a result of an illegal search of her cellphone. PCR counsel did not, however, list or incorporate defendant's other contentions in his brief. The PCR court did not address these claims.

We conclude that PCR counsel did not meet the requirements of <u>Rule</u> 3:22-6(d) in his representation of defendant. Therefore, we reverse the PCR court's denial of relief on the claims that PCR counsel did not list or incorporate in his brief and which were not addressed by the PCR court. We express no view as to whether any of these claims have merit.

---

[1] <u>United States v. Wade</u>, 388 U.S. 218 (1967).

On remand, the PCR court shall assign new PCR counsel for defendant. The court shall afford counsel the opportunity to submit supplemental certifications and another brief and permit the State to respond. The court shall conduct oral argument on the petition and determine if defendant has presented a prima facie case of ineffective assistance of counsel. If so, the court shall conduct an evidentiary hearing on defendant's additional claims.

Affirmed in part, reversed in part, and remanded to the Law Division for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0617-18T2